ORIGINAL

FILED
OCT 25 2006
U.S. COURT OF FEDERAL CLAIMS

**LAW OFFICE OF RICHARD D. MADDEN**
16 NORTH CENTRE STREET
MERCHANTVILLE, NEW JERSEY 08109
856-665-4141 FAX 856-665-4314
***Attorney for Plaintiff***

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

**No. 06-525C**

DIANA DAWSON,

v.

THE UNITED STATES

Judge : Nancy B. Firestone

AMENDED COMPLAINT

## JURISDICTION

This Court has Personal and subject matter Jurisdiction pursuant to 28 U.S.C 1491. Plaintiff is challenging a decision by the Bureau of Justice Assistance that the plaintiff is not entitled to benefits under the PSOBA, (Public Safety Officer's Benefit's Act), which is an amendment to the Omnibus Crime Control and Streets Act of 1698, 42 U.S.C. § 3701.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

1. On September 7, 1974, Richard Dawson was a Pennsauken Township, New Jersey Police Officer.

2. On that date he on duty and responding to a burglar alarm call when he lost control of his patrol vehicle on a wet roadway.

3. The vehicle left the roadway and impacted a metal pole sign.

4. Officer Dawson was freed from the wreckage by rescue workers and transported in critical condition to Our Lady of Lourdes hospital in Camden N.J.

5. As a direct result of the, "in the line of duty," accident Officer Dawson sustained severe injuries that left him a quadriplegic and confined to a wheelchair continuously until his death on March 7, 1999.

6. He retired from the Police Department on March 1, 1976.

7. As a direct result of the injuries sustained in the accident his health deteriorated, as outlined in Dr. Gerald Kaplan's report dated August 1, 2003 and marked **Exhibit 7** in the attached medical record summary, as well as Dr. Ernest Flegel's report dated May 19, 1999 marked as **Exhibit 5.**

8. The Justice Department retained Dr. Andrew M. Baker to review the records and give an opinion regarding the cause of death. In his report of March 21, 2000, **Exhibit 3,** he was unable to draw a conclusion because he did not have the records of Mr. Dawson for the last ten months of his life.

9. Dr. Kaplan and the Justice Department have been provided with the missing records and Dr. Kaplan did review them in making his conclusions and opinions. There is no supplemental report from the Justice department.

10. Police Officer Richard Dawson is survived by his wife Diana Dawson and his son, Bryan Dawson, Date of Birth, 8/18/69. Bryan Dawson has submitted a statement that he was self supporting at the time of his father's death.

11. On May 8, 2002, Eric J. Martin, Benefits Specialist issued a PSOB Act Claim Determination letter, **Exhibit 1.**

He determined that:

a. Richard Dawson was not covered under the Omnibus Crime Control and safe Streets Act of 1968 (42 U.S.C. 3796), as amended, and 28 C.F.R. 32;

b. The Public safety officers' Benefits Act covers deaths of public safety officers that resulted from in the line of duty injuries sustained on or after the date of the enactment of the Act, which was September 29, 1976. Since Officer Dawson was injured in 1974; the Act does not cover his death and Survivors are ineligible for the benefit authorized to be paid through the PSOB Program..

12. Diana Dawson was not represented by Counsel and did not receive a complete copy of the determination until February 21, 2003. Mrs. Dawson filed an appeal immediately after the initial determination in May of 2002 and Counsel filed a written appeal letter on February 13, 2003, immediately after being retained.

13. Discovery was exchanged between the claimant and the Department of Justice and the matter was scheduled for a hearing with Hearing Officer Kenneth McWilliams on December 4, 2003, 1:00pm, at the Law Office of Richard D. Madden, attorney for the claimant, at 16 North Centre Street, Merchantville, N.J. 08109.

14. The matter was heard by Hearing Officer Kenneth Williams on December 4, 2003 attached as **Exhibit 8** is a copy of his decision dated April 5, 2004, mailed to Plaintiff on October 21, 2004, received 11/15/04, finding that Officer Dawson did die from injuries sustained in the line of duty but upholding the original decision that the Act does not cover his death and Survivors are ineligible for the benefit authorized to be paid through the PSOB Program. It was appealed to the Director of the Bureau of Justice Assistance who affirmed the decision on August 5, 2005 and received by Plaintiff on August 10, 2005.

15. Plaintiff appealed this matter directly to the Third Circuit Court of Appeals and the Third Circuit transferred it to the U.S. Court of Appeals for the Federal Circuit who determined correct venue was the U.S. Court of Federal Claims.

16. Plaintiff Attorney was not a member of the U.S. Federal Court of Claims and applied for admission on June 20, 2006 and received notice of admission on September 15, 2006.

## FIRST COUNT

17. Plaintiff repeats the facts in the above Statement of facts and makes them a part hereof.

18. Richard Dawson was covered under the Omnibus Crime Control and safe Streets Act of 1968 (42 U.S.C. 3796), as amended, and 28 C.F.R. 32.

19. The Public safety officers' Benefits Act covers deaths of public safety officers that resulted from in the line of duty injuries sustained before or after the date of the enactment of the Act , which was September 29, 1976.

20. Since Officer Dawson was injured on 9/7/74, AND DIED ON 3/7/99, the Act does provide coverage to his Survivors and they are eligible for life insurance benefits authorized to be paid through the PSOB Program.

21. The Justice department's finding that officer Dawson died as a result of in the line of duty injuries is not contested by Plaintiff.

22. The Justice Department's finding that the Act does not apply to Officer Dawson and his surviving wife, Diana Dawson is wrong as a matter of law and the finding is arbitrary and capricious.

23. As a direct result of the erroneous finding of Law the Plaintiff Diana Dawson has been wrongfully denied survivor's benefits.

WHEREFORE Plaintiff Diana Dawson demands Judgment against the United States for:

1. Damages, interest and attorneys fees as set forth by Statute. ($250,000.00);

2. An Order compelling the Bureau of Justice Assistance to process and pay her application for benefits;

3. Attorney Fees;

4. For whatever other relief the Court deems appropriate;

Dated: October 24, 2006

Richard D. Madden
Attorney for Plaintiff

# EXHIBIT 1

**U.S. Departmen Justice**

Office of Justice Programs

*Bureau of Justice Assistance*

*Washington, D.C. 20531*

# PUBLIC SAFETY OFFICERS' BENEFITS ACT CLAIM DETERMINATION

**Case Number:** 1999-127

**Decedent:** Richard F. Dawson, Police Officer (PO), Pennsauken Township Police Department
Pennsauken, New Jersey 08109

**Case Summary:** On September 7, 1974, PO Richard Dawson was on-duty and responding to a burglar alarm when he lost control of his vehicle on the wet roadway. His patrol car struck the right curb, left the roadway, and impacted a metal sign pole. PO Dawson was freed from the vehicle by rescue workers and transported in critical condition to Lady of Lourdes Hospital. The injuries sustained in the accident left PO Dawson a quadriplegic and confined to a wheelchair. He retired from the police department on March 1, 1976. PO Dawson's condition led to several serious medical problems, including urinary tract infections and diabetes, which in turn resulted in the acute myocardial infarction and other heart ailments that caused his death on March 7, 1999.

**Beneficiary:** Police Officer Richard Dawson is survived by his wife, Diana Dawson. He is also survived by his child, Bryan R. Dawson, born 8/18/69. Bryan has submitted a statement that he was self-supporting at the time of his father's death. No other beneficiaries were identified.

**Determination:** This claim was certified as ready for a determination on May 1, 2002. Based on the Report of Public Safety Officer's Death submitted by the Pennsauken Township Police Department, the Claim for Death Benefits submitted by Diana Dawson, a medical analysis by the Armed Forces Institute of Pathology (AFIP), and an analysis of the facts of the case, it is determined that the death of Police Officer Richard Dawson **is not covered** under the Omnibus Crime Control and Safe Streets Act of 1968 (42 U.S.C. 3796), as amended, and 28 C.F.R. Part 32.

The Public Safety Officers' Benefits Act covers deaths of public safety officers that resulted from line of duty injuries sustained on or after the date of enactment of the Act, which was September 29, 1976. P.L. 94-430, Sec 6 (September 29, 1976). Since PO Dawson was injured in 1974, his death is not covered by the Act, and his survivors are ineligible for the benefit authorized to be paid through the PSOB Program.

**PSOB Claim No. 1999-127** **Police Officer Richard F. Dawson**

Prepared by:

Eric J. Martin, Benefits Specialist — Date: 5/1/02

Concurrence:

Office of General Counsel — Date: 5/7/02

Valerie C. Neal, Chief
Public Safety Officers' Benefits Program — Date: 5/8/02

# EXHIBIT 3

**DEPARTMENT OF DEFENSE**
**ARMED FORCES INSTITUTE OF PATHOLOGY**
**WASHINGTON DC 20306-6000**

March 21, 2000

REPLY TO
ATTENTION OF
Office of the Armed Forces
Medical Examiner

Ms. Lorraine Jenkins
Program Specialist
Public Officer's Benefits
Program
U.S. Department of Justice
810 7th Street, N.W.
Washington, D.C. 20531

RE: Dawson, Richard F. PSOB Claim No. 99-127, AFIP 2720378

Dear Ms. Jenkins:

I have reviewed the materials provided to me regarding PSOB case 99-127. The following are in response to the questions in your cover letter dated 24 Feb 2000.

1. Yes, the officer suffered a traumatic injury. While on duty as a police officer in 1974, Officer Dawson was the driver of a car that struck a metal stanchion. Officer Dawson's major injury was to the cervical spine (neck) - an injury that left him quadriplegic.

2. Officer Dawson had numerous, expected complications of quadriplegia, including urologic problems (such as urinary tract infections and bladder and kidney stones) related to a neurogenic bladder, and skin problems (decubitus ulcers). These problems stemmed from his spinal injury, and would have continued until the time of his death.

3. Yes, the officer had several chronic conditions. According to his medical records, he had hypertension, insulin-dependent diabetes, probable remote myocardial infarct, peripheral vascular disease, and congestive heart failure.

4. These conditions are documented in the medical records.

5. These conditions were chronic and all would have been present at the time of death.

Dawson, Richard F.
PSOB: 99-127

AFIP# 2720378

6. According to the 19 May 99 letter signed by Dr. Ernest Flegel, Officer Dawson's decubitus ulcers and neurogenic bladder became infected, and "led to overwhelming sepsis causing Mr. Dawson's untimely demise." Therefore, Officer Dawson's remote injuries (from 1974) were "directly responsible for his death." Assuming the premise that infection of decubitus ulcers and/or the urinary tract caused sepsis is true, I would agree completely that Officer Dawson's death was a direct result of his 1974 accident. Dr. Flegel's letter makes no mention of Officer Dawson's medical problems (as listed in answer #3, above).

7. Decubitus ulcers and a neurogenic bladder are both consequences of Officer Dawson's spinal injury; therefore, complications (such as infection) of these conditions are also sequelae of the spinal injury.

8. According to the death certificate dated 8 Mar 99 and signed by Dr. Ernest Flegel, the cause of Officer Dawson's death was "ventricular fibrillation due to acute myocardial infarction and ischemic cardiomyopathy due to occlusive coronary artery disease." Other significant conditions listed were "insulin dependent diabetes" and "chronic renal failure azotemia." The manner of death was marked "natural." Therefore, the death certificate indicates a natural death due to heart disease, without contribution from the spinal injury.

9. No mention was made on the death certificate of the spinal injury, remote accident, decubitus ulcers, or sepsis. The cardiac cause of death and the diabetes are natural phenomena, not directly related to the spinal injury. The renal failure azotemia listed on the death certificate may be related to the neurogenic bladder (and therefore due to the spinal injury), but it may also be due to Officer Dawson's heart and/or peripheral vascular disease.

10. Depending on whether one believes the letter of Dr. Flegel or the death certificate signed by Dr. Flegel, the cause of death is either complications of remote spinal injury (and manner therefore accident), or arteriosclerotic heart disease (and manner therefore natural).

Dawson, Richard F. AFIP# 2720378
PSOB: 99-127

11. These two disparate conclusions are based predominantly on the two seemingly disparate documents (the death certificate and letter) signed by Dr. Flegel, as well as the accompanying medical records.

12. Since the two opinions of Dr. Flegel provided to me are essentially mutually exclusive, I can neither agree nor disagree with either one. The medical data provided to me appears to end in May of 1998, nearly ten months before Officer Dawson died. The circumstances surrounding Officer Dawson's death were not provided. In the absence of an autopsy, or medical data from the time of Officer Dawson's death, I cannot determine whether Officer Dawson's spinal injury played a role in his death. Dr. Flegel may be able to clarify this further.

Thank you for sending this interesting case. If you have any questions please contact the undersigned at 301-319-0000.

Sincerely,

ADS

Andrew M. Baker, M.D.
MAJ, USAF, MC
Deputy Medical Examiner

# EXHIBIT 5

*Haddon Cardiology Associates, P.A.*

ERNEST E. FLEGEL, M.D.
GARY C. BURKE, D.O.
MARIA D. DUCA, M.D.

217 WHITE HORSE PIKE
HADDON HEIGHTS, NJ 08035
TELEPHONE: ~~(609)~~ 547-1212
FAX: ~~(609)~~ 547-3722
856

May 19, 1999

Mr. Ashton Flemmings
Public Safety Officers Benefits Program
Bureau of Justice Assistance
810 Seventh Street NW
Washington, DC 20531

Re: Richard Dawson
PSOB Claim #99/127
SS #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

Dear Mr. Flemmings:

This letter will certify that my associate physicians of Haddon Cardiology and I have served as attending cardiologists to Richard Dawson between March 19, 1997 and his untimely death at the age of 56. In my medical opinion, Mr. Dawson died of complications of injuries sustained in the line of duty in September, 1974. Those injuries left Mr. Dawson a quadriplegic. His paralysis confined him to a bed and wheelchair-bound existence, leading to the large decubitus ulcer of the right hip and right ischial tuberosity and neurogenic bladder mentioned in the West Jersey Hospital discharge summary involving the inpatient care period of April 24, 1998 through May 26, 1998. Infection developed at these sites and led to overwhelming sepsis causing Mr. Dawson's untimely demise.

Detailed clinical documentation is available in the patient's hospital and office records, but suffice it to say here that Richard Dawson's line of duty injuries sustained in September of 1974, are directly responsible for his death.

Very truly yours,

Ernest E. Flegel, M.D.

Ernest E. Flegel, M.D.

EEF:a&h

SIGNED AND SEALED
THIS 19 DAY OF
May, 1999

Notary Public MARY M. SCRIBONI
NOTARY PUBLIC OF NEW JERSEY
My commission expires April 15, 200

# EXHIBIT 7

# Gerald F. Kaplan, M.D.

1432 Autumn Road
Rydal, Pa 19046
215-884-0518
E mail: jfkok@aol.com

August 1, 2003

Richard D. Madden, Esquire
16 North Centre Street
Merchantville, New Jersey 08109

Re: Richard F. Dawson, deceased

Dear Mr. Madden:

This concerns the August,1999, death of police officer Richard Dawson and examines its connection, if any, with the service-connected injuries he sustained while on duty as a police officer with the Pennsaulken New Jersey Police Department some twenty five years previous. In that regard, I have reviewed the following documents and they represent the basis for what follows.

1. Records of the United States Justice Department

2. Records of the Pennsaulken New Jersey Department of Police

3. Complete records from The Our Lady of Lourdes Hospital, 8/2/98 - 12/21/98

4. Complete records from the Cooper River West Genesis Eldercare, 12/21/98 - 3/6/99

5. Richard Dawson's Death Certificate and Amended Death Certificate

6. Report of Ernest Flegel, M.D., 5/19/99

7. Report of Andrew M. Baker, M.D., 3/21/00

8. Complete records from the John F. Kennedy Hospital, Cherry Hill, New Jersey Division, 3/7/99

7

By way of background, and according to the June 6, 1999 letter written by Robert J. Brandt, Captain of the Pennsaulken New Jersey Police Department, on September 7, 1974, officer Dawson, then 32 years of age, while in the course of responding to a burglar alarm at a commercial building, was severely injured when his patrol unit skidded on the wet, slippery roadway, struck a curb, and then left the roadway, striking a large, metal stanchion.

Following a difficult extraction from his police vehicle, Officer Dawson was taken emergently to the Our Lady of Lourdes Hospital in Camden, New Jersey, where a diagnosis of quadriplegia secondary to a comminuted fracture of C6-C7 was made. Thereafter, he was transferred to the Thomas Jefferson University Medical Center's spinal unit, located in Philadelphia, Pennsylvania, where he remained for an extended time, receiving surgical treatment, medical care, and physical therapy. Despite all efforts however, he remained fully and permanently quadriplegic, confined to a bed and wheelchair for the remainder of his life. Deemed permanently disabled, he was retired from his police officer position on March 1, 1976.

Over the course of the interval between his injury and his death, despite the efforts of his healthcare providers, and those of his wife, family and friends, Officer Dawson went on to develop virtually all the inexorable consequences of a C6-C7 cord transection, including but certainly not limited to,

1. Repeated bouts of pneumonia

2. Recurrent urinary tract infections with systemic sepsis, and multi-system failure

3. Tragic level IV pressure sores of his sacrum, his trochanters, his legs and his feet, eventuating in multiple areas of acute and chronic osteomyelitis

4. Repeated episodes of respiratory insufficiency and failure, requiring tracheotomy and ventilatory support

5. Chronic malnutrition

6. Bouts of acute and chronic renal failure secondary to sepsis

7. Hypertensive cardiovascular disease secondary to renal disease

8. Pulmonary cardiomyopathy and congestive heart failure

9. Hickman catheter induced line sepsis

10. And the list goes on, as one might reasonably anticipate

Approximately 2-2 ½ years before his death, he was diagnosed with insulin-dependant diabetes mellitus, a condition whose control was obviously greatly limited by the circumstances enumerated above. That, in conjunction with his underlying inactivity, his restricted diet, pulmonary cardiomyopathy, renal-induced hypertension and chronic stress, all likely contributed to an electrocardiographic diagnosis, made in early August, 1998, (when he was admitted in sepsis), of an anterior wall myocardial infarction of uncertain duration.

During the course of that hospitalization, Mr. Dawson was diagnosed with and treated for staphylococcal and fungal sepsis, arising from urosepsis, Hickman-line catheter contamination,

pneumonia, and/or his osteomyelitis, (take your pick), and was hypotensive for days on pressor agents before "coding" on August 10, 1998. Without enumerating the particulars of the ensuing war story, he was eventually weaned from his ventilatory status and transferred to a nursing home facility on December 21, 1998, where he languished until March 6, 1999, the day before he collapsed in his home and was taken pulseless to the John F. Kennedy Hospital, Cherry Hill, New Jersey Division. After a brief resuscitation effort, he was pronounced.

Apparently unmindful of the importance of exacting precision with regard to the instant inquiry, Mr. Dawson's long-term family physician and cardiologist, Ernest Flegel, M.D., simplified his duty in filling out the Death Certificate, and ascribed the cause of death to a conjectured cardiac arrhythmia, which one can hardly fault, since every human being succumbs to an identical fate. Months later Dr. Flegel was to amend that Death Certificate, certifying further that the contributing factors to Mr. Dawson's demise included quadriplegia, sepsis, hypotension and decubitus ulcers.

Viewing the situation as a whole, and putting aside whatever may have been the "immediate" cause of this man's death, a clinician need not go through much of an academic exercise to conclude with reasonable certainty that Richard Dawson's work-related C6-C7 injury, sustained some twenty five years before his death, contributed substantially, (meaning in a meaningful and more than trivial fashion), to his final outcome. To conclude otherwise is to do an injustice to medical reasoning.

Very truly yours,

Gerald F. Kaplan, M.D.

# EXHIBIT 8

U.S. Department of Justice

Office of Justice Programs

RecD
11-15-04
Monday

Washington, D.C. 20531

OCT 21 2004

Richard D. Madden
16 North Centre Street
Merchantville, NJ 08109

Dear Mr. Madden:

On behalf of the Public Safety Officers' Benefits Program (PSOB) at the Bureau of Justice Assistance, U. S. Department of Justice, please forward to Mrs. Dawson our condolences on the loss of her husband, Richard F. Dawson, and gratitude for the efforts he provided as a Police Officer for the Pennsauken Township Police Department in New Jersey.

Following an oral hearing and comprehensive review by Administrative Hearing Officer Kenneth L. McWilliams of the entire PSOB claim, the Hearing Officer's decision upholds the PSOB Office's initial denial of benefits. Enclosed is a copy of the Hearing Officer's Determination, as well as a copy of PSOB Act of 2002 (42 U.S.C. § 3796) that governs the Program.

Should you have additional questions regarding the Determination, please do not hesitate to contact the PSOB Office toll-free at 888/744-6513.

Sincerely,

Hope D. Janke
Director, Public Safety Officers' Benefits Office

Enclosures

RECEIVED 4/21/04

# HEARING OFFICER DETERMINATION

In re: PSOB Claim Number 99-127, Police Officer Richard F. Dawson, Decedent

Appeal of: Diana Dawson, Claimant

Introduction:

On September 7, 1974, while on-duty, Pennsauken Township Police Officer Richard F. Dawson ("Officer Dawson"), lost control of his vehicle on a wet roadway enroute to investigate a burglar alarm. Officer Dawson's vehicle struck the right curb, left the roadway and impacted a metal sign pole. Officer Dawson had to be freed from the vehicle by rescue workers who then transported him in critical condition to Our Lady of Lourdes hospital. The injuries sustained by Officer Dawson rendered him a quadriplegic and confined him to a wheelchair. Officer Dawson retired from the police department on March 1, 1976, and subsequently died on March 7, 1999.

A claim for death benefits under the Public Safety Officers Benefits ("PSOB") Act , 42 U.S.C. 3796 *et seq.* (the "Act") was submitted by Officer Dawson's wife, Diana Dawson ("Claimant Dawson"). The Bureau of Justice Assistance ("BJA") requested and received documentary evidence in support of the claim and after a comprehensive review, concluded that because Officer Dawson was injured just over two years before the Act was enacted, Claimant Dawson is ineligible for benefits under the Act. The initial determination and denial of coverage was set forth in a decision dated May 8, 2002 ("Initial Decision").

Claimant Dawson appealed the Initial Decision, and later prosecuted the appeal through her attorney, Richard D. Madden, Esquire. An appeal hearing was conducted on December 4, 2003 at the law offices of Mr. Madden located at 16 North Centre Street, Merchantville, New Jersey, 08109.

Records Reviewed:

- Department of Public Safety Motor Vehicle Accident Report i/c/o Unit #203, Patrolman Dawson, dated September 7, 1974.
- Medical records from Cooper River West i/c/o Richard Dawson.
- Medical records from Our Lady of Lourdes Medical Center i/c/o Richard Dawson
- Medical records from Kennedy Memorial Hospital – Cherry Hill Division i/c/o Richard Dawson.
- Certificate of Death, Richard F. Dawson, dated March 9, 1999.
- Amended Certificate of Death, Richard F. Dawson, dated September 14, 2000.
- Report of Public Safety Officer's Death i/c/o Richard F. Dawson, dated January 24, 2000.

- Claim for Death Benefits i/c/o Richard F. Dawson, dated January 24, 2000.
- Public Safety Officers' Benefits Act Claim Determination, dated May 8, 2002.
- Letter from Dr. Flegel, M.D. of Haddon Cardiology Associates, P.A., to Office of Justice Programs, Bureau of Justice Assistance, dated May 19, 1999.
- Letter from Pennsauken Township Police Department to Bureau of Justice Assistance, dated June 4, 1999.
- Letter from Pennsauken Township Police Department to Bureau of Justice Assistance, dated February 7, 2000.
- Letter from Office of Justice Programs, Bureau of Justice Assistance to Office of the Armed Forces Medical Examiner, dated February 24, 2000.
- Letter from Dr. Flegel, M.D. of Haddon Cardiology Associates, P.A., to office of Justice Programs, Bureau of Justice Assistance, dated August 3, 2000.
- Letter from the Armed Forces Medical Examiner to Public Officer's Benefits Program Office, dated March 21, 2000.
- Letter from Pennsauken Township Police Department to Bureau of Justice Assistance, dated September 26, 2001.
- Facsimile letter from Richard D. Madden to Office of Justice Programs, Bureau of Justice Assistance, dated February 13, 2003.
- Letter from Gerald F. Kaplan, M.D. to Richard D. Madden, dated August 1, 2003.
- Letter from Richard D. Madden to Office of Justice Programs, Bureau of Justice Assistance, dated August 12, 2003.
- Facsimile from Richard D. Madden to Office of Justice Programs, Bureau of Justice Assistance, dated August 18, 2003.
- Brief in Support of Appeal submitted by Richard D. Madden.
- Transcript of Proceedings of Administrative Hearing conducted on December 4, 2003.

Issue Presented:

The central issue on appeal is whether the Act can be given retroactive effect, assuming that Officer Dawson's death can be attributed to the injuries he sustained in the line-of-duty accident he suffered September 7, 1974.

Hearing Summary:

The hearing involved both testimony and presentation of documentary evidence from Claimant Dawson and Dr. Gerald F. Kaplan, M.D. The testimony of Dr. Kaplan focused on his medical opinion that Officer Dawson died as the direct and proximate result of the personal injuries Officer Dawson sustained on September 7, 1974 in the line of duty. Claimant Dawson's testimony centered on her relationship with her husband, Officer Dawson, both before and the years following Officer Dawson's injuries which rendered him a quadriplegic. Mr. Madden summarized the testimony and argued that application of the Act should be predicated on the date of death, not the date of injury.

Discussion:

The Initial Decision did not make an express factual finding with respect to the circumstances that caused Officer Dawson's death because the claim was denied as a matter of law. However, because evidence of the cause of Officer Dawson's death was presented in great detail, this opinion makes a factual finding with respect to the cause of death. Credit here is given to the voluminous medical records, Officer Dawson's amended death certificate and the credible testimony and report of Dr. Kaplan. Based upon such evidence, Officer Dawson's death resulted from complications arising as a direct result of the line of duty motor vehicle accident and concomitant injuries sustained by Officer Dawson on September 7, 1974.

However, the statutory scheme for payment set down in the Act contemplates a limited universe of beneficiaries, limited to beneficiaries of those individuals who die as a result of injuries sustained on or after the date the Act was enacted, which was September 29, 1976. *See* P.L. 94-430, Sec. 6 (September 29, 1976).

Claimant Dawson, through her attorney, makes several legal arguments for why benefits should be awarded under the Act. While thoughtful, none of the arguments presented address the clear language, and thus statutory intent, of the Act. When Congress amended Title I of the Omnibus Crime Control and Safe Streets Act of 1968 to first enact the Public Safety Officers' Benefits Act, the amendment stated: "The amendments made by this Act shall become effective and apply to deaths occurring from injuries sustained on or after the date of enactment of this Act." P.L. 94-430, Sec. 6 (September 29, 1976).

Had the intent of Congress been otherwise, it could easily have written the amendment to exclude the words "from injuries sustained" and thus any otherwise qualifying line of duty death occurring after date of enactment, notwithstanding the date of injury, would

have been covered under the Act. However, Congress did include express language limiting payment of benefits under the Act to deaths resulting from injuries sustained on or after September 29, 1976, and thus Congress made known its intent and expressly defined the universe of beneficiaries of public safety officers to whom the Act applies. Accordingly, because Congress expressly limited benefits under the act to beneficiaries of public safety officers who sustained injuries on or after September 29, 1976, Officer Dawson's death is not covered under the Act.

Findings of Fact:

1. Officer Dawson died on March 7, 1999 as a direct and proximate result of personal injuries sustained on September 7, 1974 in the line of duty.

Conclusions of Law:

1. Officer Dawson died as a direct and proximate result of a traumatic injury within the meaning of 42 U.S.C. § 3796(a), and the relevant implementing regulations found at 28 C.F.R. Part 32 Subpart A, sustained in an auto accident while responding to a burglar alarm on September 7, 1974.
2. Death benefits are payable under the Act for injuries sustained only on or after September 29, 1976. P.L. 94-430, Sec. 6 (September 29, 1976).
3. Claimant Dawson is not eligible for benefits under the Act because the injuries sustained by Officer Dawson occurred before September 29, 1976, the date the Act was enacted.

Determination:

Based upon a review of the applicable statutes and regulations, as well as a review and analysis of all available documentary evidence including, but not limited to, the transcript of the administrative hearing held on December 4, 2003 and the supplemental brief submitted by counsel, it is my determination that benefits cannot be awarded to Claimant Dawson because the injuries sustained by Officer Dawson occurred before the implementation of the Act. Congress provided in the Act's express language, that benefits can only be awarded for deaths occurring from injuries sustained on or after the date of the Act's enactment, September 29, 1976. Accordingly, the Public Safety Officers' Benefits Act Claim Determination dated May 8, 2002 denying benefits is hereby sustained.

Kenneth L. McWilliams
Administrative Hearing Officer

Dated: April 5, 2004

**LAW OFFICE OF RICHARD D. MADDEN**
16 NORTH CENTRE STREET
MERCHANTVILLE, NEW JERSEY 08109
856-665-4141 FAX 856-665-4314
***Attorney for Plaintiff***

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

**No. 06-525C**

**DIANA DAWSON,**

**v.**

**THE UNITED STATES**

**Judge : Nancy B. Firestone**

**PROOF OF MAILING**

I hereby certify that the original and eight copies of the Amended Complaint were filed in this matter.

I hereby certify that a copy of the above was mailed by regular mail on October 24, 2006 to:

**David Allen Harrington**
U.S. Department of Justice
100 L Street
Civil Division-Commercial Litigation Br.
8th Floor
Washington DC 20530

Dated: October 24, 2006

BY: RICHARD D. MADDEN, ESQUIRE